# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

LEON LEROY LAUDIE,

                        Petitioner,

v.

BRIAN FOSTER,

                        Respondent.

Case No. 14-CV-1105-JPS

## ORDER

Petitioner Leon Laudie filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket #1). The respondent (whom the Court will hereinafter refer to as "the State"), filed an answer to Mr. Laudie's petition. (Docket #14). Mr. Laudie then filed a brief in support of his petition. (Docket #17). The State responded and Mr. Laudie replied (Docket #24, #25), meaning that this matter is fully briefed and ready for a decision.

## 1.    BACKGROUND

The Court begins by addressing the background of this case, specifically, Mr. Laudie's trial and post-trial proceedings before the Wisconsin state courts.

### 1.1    Criminal Trial

The State charged Mr. Laudie with one count of first-degree sexual assault of a child and twenty counts of possession of child pornography. (Docket #14, Ex. I ¶ 1). Those charges stemmed from allegations that Mr. Laudie had sexual contact with a victim, R.V.; police found two photos on Mr. Laudie's computer that allegedly depicted that act of sexual contact. (Docket #14, Ex. I ¶ 2). Executing a search warrant at Mr. Laudie's residence, the police found those photos and others depicting R.V. posed in a sexually explicit manner (a total of twenty such photos) on Mr. Laudie's home computer. (Docket #14, Ex. I ¶ 2). Mr. Laudie was indicted in Walworth

County Circuit Court and opted to proceed to a jury trial. (*See* Docket #14, Ex. I ¶ 1).

At trial, Mr. Laudie's defense was that his son—also named Leon Laudie—had, in fact, assaulted R.V. (*See* Docket #14, Ex. CC at 23:24–31:3). Through counsel, Mr. Laudie asserted that he had never been left alone with R.V. because he had previously been convicted of a separate sex offense and was under strict supervision. (*See* Docket #14, Ex. CC at 23:24–31:3). Meanwhile, R.V. had changed her statement several times, identifying the person who had assaulted her by different names that could also have been applied to Mr. Laudie's son. (*See* Docket #14, Ex. CC at 23:24–31:3). And Mr. Laudie's son also allegedly had access to Mr. Laudie's home computer, such that the son could have placed the incriminating evidence there without Mr. Laudie's knowledge. (*See* Docket #14, Ex. CC at 23:24–31:3).

The jury rejected this argument and found Mr. Laudie guilty on all charges. (*See* Docket #14, Ex. I ¶ 1).

The circuit court sentenced Mr. Laudie to mandatory life imprisonment without the possibility of extended supervision on the sexual assault charge. (Docket #14, Ex. A). As to each of the possession of child pornography charges, the circuit court sentenced Mr. Laudie to three years of initial confinement and three years of extended supervision, to run consecutive to each other but concurrent with Mr. Laudie's life sentence. (Docket #14, Ex. A).

1.2    Direct Appeal

Mr. Laudie, through new counsel, appealed his conviction, raising two separate arguments. (*See* Docket #14, Ex. I ¶¶ 3, 7; Docket #14, Ex. F at 10–21). First, he argued that the circuit court erred by allowing R.V.'s

videotaped statement to be introduced as evidence, in violation of Wis. Stat. § 908.08(3)(c). (Docket #14, Ex. I ¶ 3; Docket #14, Ex. F at 10–16). Second, he argued that the circuit court erred by allowing a statement that Mr. Laudie provided to police officers to be received in evidence; Mr. Laudie contended that the statement should have been suppressed under *Miranda v. Arizona*, 384 U.S. 436 (1966). (Docket #14, Ex. I ¶ 7; Docket #14, Ex. F at 16–21).

The Wisconsin Court of Appeals rejected both of those arguments and affirmed Mr. Laudie's conviction. (Docket #14, Ex. I ¶¶ 6, 16).

Mr. Laudie petitioned the Wisconsin Supreme Court for review (Docket #14, Ex. J); the Wisconsin Supreme Court denied that petition. (Docket #14, Ex. L).

### 1.3 Post-Conviction Motions and Appeal

Two months later, Mr. Laudie filed a series of post-conviction motions in Walworth County Circuit Court, pursuant to Wis. Stat. § 974.06. (Docket #14, Ex. B, Entry Nos. 43–48). Mr. Laudie's state court docket sheet lists those motions as raising the following grounds: "Ineffective Assistance of Counsel[s]"; "Failure to Disclose Material"; "Challenge to Suppress - Images/Photographs Inside Residence"; "Suppression of Evidence"; and "Recusal." (Docket #14, Ex. B, Entry Nos. 43–48). The circuit court held a hearing on those motions and denied them. (Docket #14, Ex. M). In full, the circuit court's order stated: "IT IS HEREBY ORDERED, that for the reasons set forth on the record at the motion hearing held on February 22, 2013, the Defendant's Motions for Post Conviction Relief are denied." (Docket #14, Ex. M).

Mr. Laudie appealed the denial of his motions. (Docket #14, Ex. N). He raised five arguments: (1) that the trial judge should have recused himself as

a result of comments he made during a preliminary hearing; (2) that a photo of Mr. Laudie's penis (which was admitted to compare Mr. Laudie's penis to the penis shown in the photos of R.V.) should have been excluded because it showed Mr. Laudie in jail clothes and restraints; (3) that trial counsel was ineffective in failing to request a physical examination of R.V.; (4) that the search warrant application did not establish probable cause because it failed to include certain necessary information; and (5) that the trial court imposed child pornography surcharges in error. (Docket #14, Ex. N at 3–18).

In filing his appeal, Mr. Laudie was required, under Wis. Stat. Rule 809.11(4), to fill out a "statement on transcript," certifying that every transcript necessary for his appeal had been prepared. (*See* Docket #14, Ex. Q at 2). He made that required statement, but, apparently, did not actually order the transcript of the circuit court's hearing on his post-conviction motion. (*See* Docket #14, Ex. Q at 2).

Thus, the State opposed Mr. Laudie's appeal, primarily arguing that, because Mr. Laudie had not included the transcript in the record, the Wisconsin Court of Appeals was required to affirm the circuit court's denial of Mr. Laudie's § 974.06 motion. (Docket #14, Ex. O at 3).

The Wisconsin Court of Appeals agreed:

> In 2012, Laudie filed the Wis. Stat. § 974.06 motion that is the subject of this appeal. The circuit court heard Laudie's § 974.06 motion on February 22, 2013. The circuit court's March 6, 2013 order denied the motion "for the reasons set forth on the record at the motion hearing." In his Wis. Stat. Rule 809.11(4) statement on transcript for this appeal, Laudie stated that all transcripts necessary for the appeal had been prepared. Laudie did not order preparation of the February 22 transcript.

Case 2:14-cv-01105-JPS   Filed 07/22/15   Page 4 of 23   Document 30

On appeal, Laudie asks us to reverse the circuit court's decision. Without a transcript, we cannot know the basis for the circuit court's denial of his motion, and we will not speculate about that basis. Laudie bore the responsibility to insure that the record on appeal is sufficient for our review. *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26-27, 496 N.W.2d 226 (Ct. App. 1993). "We cannot review what is not before us." *State v. Dietzen*, 164 Wis. 2d 205, 212, 474 N.W.2d 753 (Ct. App. 1991).

(Docket #14, Ex. Q at 2). For those reasons, and "pursuant to Wis. Stat. Rule 809.21," the Wisconsin Court of Appeals "summarily affirmed" the circuit court's denial of Mr. Laudie's post-conviction motion.

Mr. Laudie filed a petition for review with the Wisconsin Supreme Court (Docket #14, Ex. R); the Wisconsin Supreme Court denied that petition (Docket #14, Ex. T).

### 1.4    State Habeas Proceedings

Mr. Laudie also filed a *Knight* petition with the Wisconsin Court of Appeals, seeking a writ of habeas corpus from that court on the basis that his counsel on direct appeal had been ineffective. (Docket #14, Ex. U). In this regard, Mr. Laudie contended that: (1) his appellate counsel should have argued that the affidavit supporting the search warrant was improper; (2) that the trial judge should have recused himself; (3) that the jury saw photos of Mr. Laudie in jail clothes; (4) that his trial counsel should have questioned why R.V.'s mother canceled a sexual assault exam of R.V.; (5) that the trial court's staff acted inappropriately by reminding the trial judge to impose a child pornography surcharge; and (6) that the trial court should have *sua*

*sponte* ordered the dismissal of two jurors who appeared biased.[1] (Docket #14, Ex. U at 6; Docket #14, Ex. V at 2–6).

The Wisconsin Court of Appeals analyzed Mr. Laudie's arguments and rejected all of them. (Docket #14, Ex. V). It determined that Mr. Laudie had not met his burden of proving ineffective assistance of counsel, as required by *Strickland v. Washington*, 466 U.S. 668 (1984).

Again, Mr. Laudie filed a petition for review (Docket #14, Ex. W), which the Wisconsin Supreme Court denied (Docket #14, Ex. Y).

## 2.    FEDERAL HABEAS PETITION

Mr. Laudie then filed the federal habeas petition that is currently before the Court. In it and in his brief in support thereof, Mr. Laudie alleges twelves separate grounds for relief:

(1)    that Mr. Laudie's trial counsel was ineffective in failing to challenge an affidavit that underlied the search warrant and allegedly omitted evidence that was necessary to establish probable cause (Docket #17 at 1–3);

(2)    that Mr. Laudie's trial counsel was ineffective in failing to request the trial judge's recusal from the case (Docket #17 at 3–6);

_____

[1]Mr. Laudie's state habeas brief was not very clear as to whether Mr. Laudie was making these arguments substantively or through the lens of a claim of ineffective assistance of appellate counsel. The Wisconsin Court of Appeals' decision is not much clearer. At the beginning, the decision states that "Laudie contends that appointed appellate counsel failed to identify six issues in his direct appeal that, to a reasonable probability, would have resulted in a reversal of his conviction, an order to suppress evidence and/or a new trial." (Docket #14, Ex. V at 1). The decision also references concepts of ineffective assistance at other points. But on several of the grounds, it addresses the substantive merits of the underlying claims. (*See* Docket #14, Ex. V at 3–6). Of course, that could simply be the Wisconsin Court of Appeals' unstated method of performing a prejudice analysis, as Mr. Laudie would have to show an underlying violation of his rights to establish ineffective assistance.

(3)     that Mr. Laudie's trial counsel was ineffective in failing to challenge the introduction of photos allegedly taken in violation of Mr. Laudie's constitutional rights (Docket #17 at 6–8);

(4–5)   that Mr. Laudie's trial counsel was ineffective in failing to object to use of R.V.'s testimony on the basis of the Confrontation Clause or Compulsory Process Clause (Docket #17 at 8–11);

(6)     that Mr. Laudie's trial counsel was ineffective in failing to object to the use of inflammatory photos of Mr. Laudie (Docket #17 at 11–12);

(7)     that Mr. Laudie's trial counsel was ineffective in failing to object to the method by which the prosecutor had R.V. identify Mr. Laudie (Docket #17 at 12);

(8)     that the trial judge erred when he did not *sua sponte* strike two jurors who were allegedly biased (Docket #17 at 13);

(9)     that Mr. Laudie's trial counsel was ineffective at the time of sentencing in failing to object to the erroneous imposition of child pornography surcharges (Docket #17 at 13–15);

(10)    that Mr. Laudie's trial counsel was ineffective in failing to adequately investigate or pursue a motion to suppress Mr. Laudie's statements to police (Docket #17 at 15–17);

(11)    that Mr. Laudie's trial counsel was ineffective in failing to challenge the introduction of evidence gathered by police that allegedly was not covered by the search warrant (Docket #17 at 17–18); and

(12)    that Mr. Laudie's appellate counsel was ineffective "for failure to raise certain claims and ineffective assistance of [t]rial [c]ounsel claims, that [Mr. Laudie] requested should be raised" (Docket #17 at 18–19).

To summarize, almost all of those grounds—specifically, Grounds One, Two, Three, Four, Five, Six, Seven, Nine, Ten, and Eleven—allege ineffectiveness

Case 2:14-cv-01105-JPS   Filed 07/22/15   Page 7 of 23   Document 30

of trial counsel; Ground Eight alleges a problem with the jury; and Ground Twelve alleges ineffectiveness of appellate counsel.

3.    ANALYSIS

There are essentially three separate groups of grounds for relief—ineffectiveness of trial counsel, jury issues, and ineffectiveness of appellate counsel—and the Court will address each separately, as follows.

### 3.1    Ineffectiveness of Trial Counsel

The State's primary argues that Mr. Laudie procedurally defaulted all of his grounds alleging ineffectiveness of trial counsel. The Court ultimately agrees, though it has a few reservations about reaching that decision.

To begin, the Court must point out that the State came very close to waiving its procedural default argument. The State's answer to Mr. Laudie's petition for a writ of habeas corpus alleges that only one of Mr. Laudie's claims is procedurally defaulted. (*See* Docket #14 ¶ 12). It was not until the State filed its response to Mr. Laudie's brief in support of his petition that the State asserted procedural default of the remaining claims. Procedural default is an affirmative defense that can be waived. *See, e.g.*, *Eichwedel v. Chandler*, 696 F.3d 660, 669–71 (7th Cir. 2012) (citing *Perruquet v. Briley*, 390 F.3d 505, 514, 517 (7th Cir. 2004)). "Generally, a party must plead affirmative defenses, such as procedural default, in its answer to properly preserve them." *Kaczmarek v. Rednour*, 627 F.3d 586, 591-92 (7th Cir. 2010) (citing Fed. R. Civ. P. 8(c); *Robinson v. Johnson*, 313 F.3d 128, 137 (3d Cir. 2002) ("affirmative defenses under the AEDPA [must be] pleaded in the answer…[or] raised at the earliest practicable moment thereafter"); *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) ("the defense of procedural default should be raised in the first responsive pleading in order to avoid waiver")). But, "[d]istrict judges have authority to authorize a litigant to assert an affirmative defense

Case 2:14-cv-01105-JPS   Filed 07/22/15   Page 8 of 23   Document 30

despite its omission from the answer." *Global Tech. & Trading, Inc. v. Tech Mahindra Ltd.*, No. 14-3045, slip op., 2015 WL 3654239, at *3 (7th Cir. June 15, 2015). And, in this case, the Court finds it appropriate to authorize the State to assert procedural default, despite not having raised it in its answer. "The State's silence on the subject of procedural default is normally not enough, standing alone, to demonstrate the intent to relinquish the defense that is the essence of true waiver." *Perruquest*, 390 F.3d at 517 (citing *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998); *United states v. Rhodes*, 330 F.3d 949, 952–53 (7th Cir. 2003); *United States v. Lemmons*, 282 F.3d 920, 923 n.3 (7th Cir. 2002)). Thus, in this case, where the State was simply silent in its initial pleading, but thereafter fully aired its procedural default argument, leaving Mr. Laudie an opportunity to address that issue in his reply brief, the Court will exercise its discretion to allow the State to assert its procedural default affirmative defense. *See Global Tech.*, 2015 WL 3654239, at *3.

Having determined that the State can assert the affirmative defense of procedural default, the Court must next address the substance of that argument.

> Federalism and comity principles pervade federal habeas jurisprudence. One of these principles is that "in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To protect the primary role of state courts in remedying alleged constitutional errors in state criminal proceedings, federal courts will not review a habeas petition unless the prisoner has fairly presented his claims "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014); 28 U.S.C. § 2254(b)(1). This requirement has two components: the petitioner's claims must be exhausted, meaning that there is no remaining state

Case 2:14-cv-01105-JPS   Filed 07/22/15   Page 9 of 23   Document 30

court with jurisdiction, and the exhaustion must not be attributable to the petitioner's failure to comply with the state court system's procedural rules. "In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default…." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006) (internal quotation marks omitted).

Procedural default is one application of the "adequate and independent state ground" doctrine: "When a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed." *Richardson*, 745 F.3d at 268 (quotation marks omitted). The violation of a state court's procedural rules is an adequate and independent state-law basis for denying a petitioner's requested relief. Therefore, a habeas petitioner who has procedurally defaulted in state court—and thus has not fairly presented those claims through one complete round of state-court review—cannot have his defaulted claims heard in federal court. In this way, federalism and comity principles protect the integrity of a state court system's procedural rules and ensure that the state judiciary has the first opportunity to correct constitutional errors. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("A State's procedural rules are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system.").

*Johnson v. Foster*, 786 F.3d 501, 504-05 (7th Cir. 2015). The Seventh Circuit has also explained that there are multiple strains of procedural default:

Procedural defaults take several forms, but two are paradigmatic. On the one hand, a claim might be procedurally defaulted when a petitioner fails to "fairly present" his claim to the state courts, regardless of whether he initially preserved it with an objection at the trial level. To fairly present his federal claim, a petitioner must assert that claim throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings. *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir.

Case 2:14-cv-01105-JPS   Filed 07/22/15   Page 10 of 23   Document 30

2013); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The complete round requirement means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory. *Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004) (citing *O'Sullivan*, 526 U.S. at 845–46). On the other hand, a claim might be procedurally defaulted through a petitioner's initial failure to preserve it with an objection, even if the petitioner later does attempt to present it for review. "[W]hen a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules (i.e., because the petitioner failed to contemporaneously object), that decision rests on independent and adequate state procedural grounds." *Kaczmarek*, 627 F.3d at 591 (citing *Woods* [*v. Schwartz*], 589 F.3d [368,] 373 [(7th Cir. 2009)]; *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010)).

*Richardson*, 745 F.3d 258, 268–69 (7th Cir. 2014) *cert. denied sub nom. Richardson v. Pfister*, 135 S. Ct. 380 (2014). In short, the question before the Court is whether Mr. Laudie ever properly presented his ineffective assistance of trial counsel grounds to the Wisconsin state courts.

It is clear that he did not present those grounds during his direct appeal or his state habeas proceedings. On direct appeal, Mr. Laudie raised only two grounds: "that the trial court erred in admitting [R.V.]'s videotaped statement and in denying [Mr. Laudie's] motion to suppress a statement he gave to police." (Docket #14, Ex. V at 2); (Docket #14, Ex. I ¶¶ 3, 7; Docket #14, Ex. F at 10–21). In his state habeas proceeding, it appears that Mr. Laudie contended only that his appellate counsel was ineffective. (*See* Docket #14, Ex. V at 1 ("Laudie contends that appointed appellate counsel failed to identify six issues in his direct appeal that, to a reasonable probability, would have resulted in a reversal of his conviction, an order to suppress evidence and/or a new trial.")). The Wisconsin Court of Appeals even made clear that

"Laudie does not allege that he made an effort to file a postconviction motion challenging his trial counsel's representation." (Docket #14, Ex. V at 6). However, even if the Court treats Mr. Laudie as having raised the substantive claims underlying his ineffective assistance of appellate counsel arguments, only one of those underlying claims challenged the assistance of *trial* counsel: his fourth claim, which asserted that his trial counsel should have questioned why R.V.'s mother canceled a sexual assault exam of R.V. (*See* Docket #14, Ex. U at 6; Docket #14, Ex. V at 2–6). But he does not raise that ground in the federal habeas petition that is now before the Court. Thus, it is clear that Mr. Laudie failed to present in either his direct appeal or state habeas proceedings any of the grounds he now asserts.

On the other hand, Mr. Laudie *may* have presented his trial counsel grounds in his first post-conviction motion; but, even if he did, he ultimately procedurally defaulted those grounds by failing to properly raise them before the Wisconsin Court of Appeals. As already mentioned, the Wisconsin Court of Appeals affirmed the trial court's denial of Mr. Laudie's post-conviction motion on the following basis:

> In 2012, Laudie filed the Wis. Stat. § 974.06 motion that is the subject of this appeal. The circuit court heard Laudie's § 974.06 motion on February 22, 2013. The circuit court's March 6, 2013 order denied the motion "for the reasons set forth on the record at the motion hearing." In his Wis. Stat. Rule 809.11(4) statement on transcript for this appeal, Laudie stated that all transcripts necessary for the appeal had been prepared. Laudie did not order preparation of the February 22 transcript.

> On appeal, Laudie asks us to reverse the circuit court's decision. Without a transcript, we cannot know the basis for the circuit court's denial of his motion, and we will not speculate about that basis. Laudie bore the responsibility to insure that the record on appeal is sufficient for our review. *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26-27, 496 N.W.2d 226

> (Ct. App. 1993). "We cannot review what is not before us."
> *State v. Dietzen*, 164 Wis. 2d 205, 212, 474 N.W.2d 753 (Ct. App.
> 1991).

(Docket #14, Ex. Q at 2). Of course, "the mere invocation of a state law rule does not necessarily create an 'independent' state law ground to support a judgment. The state court must actually have relied on that rule—and not on a parallel or interwoven federal basis—in order to foreclose our review." *Richardson*, 745 F.3d at 269 (citing *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). But, in this case, it is amply clear that the Wisconsin Court of Appeals relied entirely on Mr. Laudie's procedural failure. Its order was only two pages, and the entire rationale for its affirmance of the trial court's order was Mr. Laudie's procedural failure. (*See* Docket #14, Ex. Q at 1–2 (discussing background of case then providing the above-quoted two paragraph discussion in affirming the trial court)). Thus, the Wisconsin Court of Appeals' affirmance was based upon an "independent" state law ground.

> A state law ground must be "adequate," in addition to independent, to foreclose federal review. For a procedural default to be considered an adequate state law ground, the rule under which it is invoked must have been firmly established and regularly followed as of the time when the procedural default occurred. *James v. Kentucky*, 466 U.S. 341, 348–49 (1984); *Ford* [*v. Georgia*], 498 U.S. [411,] 423–24 [(1991)]; *see also Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010); *Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir. 1999). Only then can a petitioner be "deemed to have been apprised of its existence." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457 (1958).

*Richardson*, 745 F.3d at 271. The Wisconsin Court of Appeals' ruling invoked *Fiumefreddo*, which has "been consistently cited for the procedural rule that an appellant is required to create the record on appeal." *Singh v. Kemper*, No. 14-CV-122, 2015 WL 1014659, at *2 (E.D. Wis. Mar. 9, 2015) (citing *In re Soreh M.,* 2015 WI App 13, 359 Wis. 2d 677, 859 N.W.2d 630 (applying rule in

appeal from an order finding a minor is in need of protection or services); *Fouts v. Breezy Point Condominium Ass'n*, 2014 WI App 77, 355 Wis. 2d 487, 851 N.W.2d 845 (applying rule in appeal from order granting summary judgment); *State v. Ferguson*, 2014 WI App 48, 354 Wis.2d 253, 847 N.W.2d 900 (applying rule in appeal from ordering denying motion to withdraw guilty plea); *Manke v. Physicians Ins. Co. of Wisconsin, Inc.*, 2006 WI App 50, 289 Wis.2d 750, 712 N.W.2d 40 (applying rule in appeal in medical malpractice case)). Thus, clearly, the Wisconsin Court of Appeals' ruling was based on an independent and adequate state ground.

For these reasons, the Court finds that Mr. Laudie defaulted all of his ineffective assistance of trial counsel claims. But that is not the end of the analysis. "Because the independent and adequate state law ground rule is prudential and not jurisdictional, we may excuse a procedural default if the petitioner can show both cause for and prejudice from the default or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice." (*Richardson*, 745 F.3d at 272 (citing *Bolton v. Akpore*, 730 F.3d 685, 696 (7th Cir. 2013))).

Mr. Laudie has not argued that a miscarriage of justice would result if the Court refused to hear his defaulted ineffective assistance of trial counsel grounds; but, even if he did make that argument, he would not satisfy the high standard required to establish it. A petitioner establishes a miscarriage of justice "only when the claimed constitutional violation probably caused an innocent person to be convicted." *Johnson*, 786 F.3d at 505 (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). "A petitioner does not meet the threshold requirement unless he persuades the district court that…no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995); *see also McQuiggin v.*

*Perkins*, --- U.S. ----, 133 S.Ct. 1924, 1928 (2013). Mr. Laudie has not even come close to making this showing. The evidence presented against Mr. Laudie at trial was overwhelming. Nothing presented in any of Mr. Laudie's post-trial proceedings call the result into question. The Court is convinced that any reasonable juror would still convict Mr. Laudie.

As to cause and prejudice, Mr. Laudie has shown neither. In his reply, Mr. Laudie states:

> The Petitioner was not aware or did not know, that its required to have the transcripts prepared from the Post Conviction hearing if the Circuit Court denied all Motion(s), under Escalona-Naranjo; as petitioner based his arguments from the original record and transcripts that was already prepared. Does a Pro se litigant lose substancial right's on the merit's of an issue, due to ignorance of technicality procedure's, when its obvious and clear Constitutional error's affected his right's in issue(s) raised or does a State Court have a role to view a Pro se litigant less stringently…The Petitioner believed that he did the best of his knowledge exhaust all State remedies that were known to him, the Petitioner was not given oppurtunity to have transcripts prepared from the Post Conviction hearing for the Court of Appeals, otherwise that would have been followed and achieved…

(Docket #29 at 1 (*sic* throughout)). Thus, it appears that Mr. Laudie is arguing that, because he was not aware of the transcript requirement (despite having acknowledged that he had secured the required transcripts), his procedural default should be excused. This does not satisfy the "cause" requirement. "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his claim." *Richardson*, 745 F.3d at 272 (citing *Lewis*, 390 F.3d at 1026). Mr. Laudie's own misunderstanding of the requirements is not external to him, and thus does not satisfy the cause requirement. He also has not shown prejudice.

Case 2:14-cv-01105-JPS   Filed 07/22/15   Page 15 of 23   Document 30

"Prejudice means an error which so infected the entire trial that the resulting conviction violates due process." *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013). As the Court has already mentioned, Mr. Laudie's conviction rests on firm footing; nothing about it violates due process. For these reasons, the Court finds that Mr. Laudie has not established cause or prejudice.

Having determined that Mr. Laudie procedurally defaulted his ineffective assistance of trial counsel grounds (and has not established that the Court should apply an exception to hear the claims), the Court now rejects those grounds.

### 3.2    Juror Bias

Mr. Laudie argues that the trial judge should have *sua sponte* struck jurors who had implied bias against Mr. Laudie. (*See* Docket #17 at 13). He appears to base this claim on the fact that two jurors initially answered that they might expect Mr. Laudie to testify. (*see* Docket #14, Ex. BB at 109:11–111:6). Mr. Laudie's trial counsel explained further that "[t]he judge would give you an instruction that he would say that you are not - - that [Mr. Laudie] has a right to remain silent, and you are not to use it against him," then asked "[i]f the judge reviewed that instruction can you follow that rule?" (Docket #114, Ex. BB at 111:2–111:8). The first juror responded "Yes." (Docket #14, Ex. BB at 111:9). Mr. Laudie's attorney then posed a similar question to the second juror: "if the judge reads an instruction to you that says that Mr. Laudie has an absolute right to remain silent and you cannot use it against him, can you follow that instruction, or would you have problems with that?" (Docket #14, Ex. BB at 111:20–111:24). The juror responded "I do not know." (Docket #14, Ex. BB at 111:25). Mr. Laudie's attorney then asked "And you would not hold that against Mr. Laudie?"

(Docket #14, Ex. BB at 112:1–2). The second juror responded "No." (Docket #14, Ex. BB at 112:3).

In ruling on Mr. Laudie's state habeas petition, the Wisconsin Court of Appeals rejected this claim on factual grounds. It found that the trial court's factual finding "that Juror S. [the first juror] could be impartial is not clearly erroneous." (Docket #14, Ex. V at 6 (citing *State v. Faucher*, 227 Wis. 2d 700, 718, 596 N.W.2d 770 (1999))). It also found that "Juror C. [the second juror] expressly stated that she would not hold Laudie's silence against him." (Docket #14, Ex. V at 6).

Both of those findings are *clearly* supported by the record. While, perhaps both jurors initially expressed reservations about a defendant declining to testify, upon further question by *Mr. Laudie*'s lawyer, both clarified that they could be impartial if instructed that a defendant had a right to remain silent. Mr. Laudie does not argue that any court misapplied substantive law on this ground (and the Court cannot find any indication of a legal error), so it appears that he must be arguing that the Wisconsin Court of Appeals' decision on this ground "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," which could support habeas relief. 28 U.S.C. § 2254(d). *See also Conner v. McBride*, 375 F.3d 643, 648–49 (7th Cir. 2004) (citing *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997)). "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey v. Lemke*, 735 F.3d 945, 949–50 (7th Cir. 2013) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010); citing *Ward v. Sternes*, 334 F.3d 696 (7th Cir. 2003)). The Wisconsin Court of Appeals' decision on this ground was not against the weight of the evidence; in fact, it was fully consistent with the evidence.

Accordingly, the Court rejects this ground for relief.

### 3.3    Ineffectiveness of Appellate Counsel

Mr. Laudie offers only vague assertions of ineffectiveness of appellate counsel. In his brief supporting his petition, he argues that his appellate counsel was ineffective "for failure to raise certain claims and ineffective assistance of trial counsel claims." (Docket #17 at 18). He asserts that he presented his appellate counsel "with up to 17 issue[s] during the direct appeal process, by interview and written letters," and that appellate counsel "declined to raise viable or obvious issue[s], at client['s] request in direct appeal." (Docket #17 at 19). The closest Mr. Laudie gets to identifying an issue that appellate counsel failed to raise is in stating that appellate counsel "refused to challenge ineffective assistance of trial counsel, on various issue[s]." (Docket #17 at 19). Although, unfortunately, Mr. Laudie still does not identify what those underlying issues were. (Docket #17 at 19).

Without some better indication of precisely *why* Mr. Laudie believes that his appellate counsel was ineffective, it is very difficult for the Court to evaluate his claim. That is why, often, such underdeveloped arguments are treated as having been waived. *See, e.g.*, *Fluker v. Cty. of Kankakee*, 741 F.3d 787, 795 (7th Cir. 2013) (perfunctory and undeveloped arguments waived). And, in this instance, Mr. Laudie bears the burden of establishing ineffective assistance, making his failure to support his position all the more problematic. But, even if the Court were not to view Mr. Laudie as having waived his argument regarding ineffectiveness of appellate counsel, it still would not grant Mr. Laudie relief on that basis, because the ground is without merit.

"The general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel." *Makiel v. Butler*, 782

F.3d 882, 897 (7th Cir. 2015) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). With that said, "[a]ppellate counsel is not required to present every non-frivolous claim on behalf of her client." *Makiel*, 782 F.3d at 897 (citing *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996)). Rather, "[a]ppellate counsel's performance is deficient under *Strickland* only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Makiel*, 782 F.3d at 898 (citing *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010); *Lee v. Davis*, 328 F.3d 896, 900–01 (7th Cir. 2003)). This is a difficult showing to make, "because the comparative strength of two claims is usually debatable." *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013).

Comparing the arguments raised by Mr. Laudie's appellate counsel on direct appeal with the only potentially non-defaulted ineffectiveness of appellate counsel claims, it is clear that Mr. Laudie's appellate counsel acted effectively. On direct appeal, Mr. Laudie's appellate counsel raised two arguments that had a fairly good chance of success: (1) that the trial court improperly admitted the victim's videotaped statement; and (2) that the trial court improperly denied Mr. Laudie's motion to suppress statements he made to police. (Docket #14, Ex. I ¶¶ 3, 7; Docket #14, Ex. F at 10–21). By comparison, any claims that Mr. Laudie could possibly be raising at this point are very weak.

The only non-defaulted arguments that Mr. Laudie could possibly be raising at this point are that his appellate counsel should have argued that: (1) the affidavit supporting the search warrant was improper; (2) the trial judge should have recused himself; (3) the jury improperly saw photos of Mr. Laudie in jail clothes; (4) that his trial counsel should have questioned why R.V.'s mother canceled a sexual assault exam of R.V.; (5) that the trial court's staff acted inappropriately by reminding the trial judge to impose a child

pornography surcharge; and (6) that the trial court should have *sua sponte* ordered the dismissal of two jurors who appeared biased. (*See* Docket #14, Ex. U at 6; Docket #14, Ex. V at 2–6).

Each of those arguments was either very weak or wholly without merit. *First*, Mr. Laudie's affidavit argument was extremely weak. The Wisconsin Court of Appeals considered every alleged deficiency in the affidavit and found no problems. (Docket #14, Ex. V at 2–4). The Court agrees with the Wisconsin Court of Appeals' analysis: even without the information that Mr. Laudie asserts should have been included, there was probable cause; extraneous information that was included was not factually incorrect. (Docket #14, Ex. V at 2–4). *Second*, Mr. Laudie's recusal argument was wholly without merit. The trial judge did not indicate any bias; in fact, he was very forthright about the fact the he previously presided over a proceeding against Mr. Laudie, but that this would not affect his participation: "And, um, so I just mention it for the record. It doesn't make any difference to me, and I don't think it causes any problem; but I thought it's a kind of ironic twist of fate. And just in case, I thought I should put it on the record…so the parties are aware of it…" (Docket #14, Ex. Z at 3:7–5:17). Even if the argument had been raised, there was no basis to grant it. *Third*, Mr. Laudie's argument regarding the use of photographs showing him in jail clothes was, perhaps, the strongest argument that was not raised on direct appeal, but it was not stronger than the grounds that were actually raised on direct appeal. In any event, Mr. Laudie has defaulted it. (*See* Docket #14, Ex. V at 5 (rejecting argument because Mr. Laudie did not allege that the jury unmistakably could have concluded that Mr. Laudie was in custody and "[a]n ineffectiveness claim may not be based on speculation.")). *Fourth*, Mr. Laudie's argument regarding the cancellation of R.V.'s assault exam was

wholly without merit. As the Wisconsin Court of Appeals noted, it is unclear what, if any, an inquiry into this information would have returned. (Docket #14, Ex. V at 5). *Fifth*, Mr. Laudie's argument regarding the child pornography surcharge was wholly without merit. As the Court of Appeals recognized, the surcharge was mandatory under Wis. Stat. § 973.042(2) and (3) (Docket #14, Ex. V at 5), so any challenge to it would have been rejected. *Sixth*, Mr. Laudie's juror-dismissal argument was extremely weak; as the Court has already discussed, Mr. Laudie's attorney asked questions and verified the impartiality of the jury. A later challenge would have been rejected.

In sum, Mr. Laudie's appellate counsel raised two strong arguments and rejected six arguments that were either weak or wholly without merit. On balance, it is clear that Mr. Laudie's appellate counsel was not ineffective; none of the unraised claims were "clearly stronger" than the claims that were actually raised. *See Makiel*, 782 F.3d at 898 (citing *Brown*, 598 F.3d at 425).

Finally, Mr. Laudie may also be complaining that his appellate counsel asked for several extensions of time, but does not identify any way in which extensions of time caused him prejudice (*see* Docket #17 at 19), so the Court rejects this argument.

4.    CONCLUSION

For all of these reasons, the Court is obliged to deny Mr. Laudie's petition for a writ of habeas corpus. (Docket #1). Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Mr. Laudie must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate

Case 2:14-cv-01105-JPS   Filed 07/22/15   Page 21 of 23   Document 30

whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). While Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should be issued, additional arguments are not necessary here. As the Court discussed extensively, above, reasonable jurists would not debate whether the petition should have been resolved in a different manner. Mr. Laudie clearly defaulted a majority of his claims. The remaining claims lack merit. No reasonable jurist would find it debatable that Mr. Leather's petition fails to make any showing—let alone a substantial showing—of a violation of a constitutional right. As a consequence, the court must deny a certificate of appealability as to Mr. Laudie's petition.

Last, the Court acknowledges that Mr. Laudie filed a motion that remains outstanding. On March 12, 2015, the Court entered an order granting the State an extension of time, but warning that no further extensions would be granted. (Docket #23). Unfortunately, a confluence of significant events—the State's counsel spent a week in the hospital and her secretary's one-year-old son was later admitted to the hospital—necessitated a further request for an extension. (Docket #25). Mr. Laudie opposed the additional extension. (Docket #26). However, recognizing that the State's reason for an extension was well-founded and unexpected, the Court granted the request via text order. Mr. Laudie then moved to vacate the Court's grant of the additional extension and also requested entry of default in his favor. (Docket #27). The Court has the power to control its docket and found it appropriate to grant the State's requested extension. It will not vacate its order and, accordingly, default against the State is not appropriate.

Accordingly,

IT IS ORDERED that Mr. Laudie's motion to vacate and for default (Docket #27) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the Mr. Laudie's petition for a writ of *habeas corpus* (Docket #1) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that a certificate of appealability as to Mr. Laudie's petition be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED with prejudice.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 22nd day of July, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge